IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| EMMITT PERKINS, | : |
|---|---|
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : No. 07-2124 |
| CORRECTIONAL OFFICER | : |
| SERGEANT SCWAPPACH, | : |
| Defendant. | : |

**MEMORANDUM**

**Baylson, J.**                                                                                       **April 16, 2010**

## I.  Introduction

Plaintiff, Emmitt Perkins, a Pennsylvania state prisoner currently incarcerated at the State Correctional Institute at Graterford ("Graterford"), filed this action for money damages pursuant to 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution against Defendant Sergeant Jurgen Schwappach, a correctional officer at Graterford, alleging that Defendant Schwappach denied Plaintiff access to medical attention. Presently before the Court is Defendant's Motion for Summary Judgment (Doc. No. 40). For the reasons discussed below, the Court will grant Defendant's motion.

## II.  Background

### A.  Factual History[1]

---

[1]At the onset, the Court points out that while Defendant's Statement of Undisputed Facts (Doc. No. 40) provided citations to the record as required by this Court's procedural rules, Plaintiff's response (Doc. No. 44) failed in nearly every instance to provide citations to the record to indicate support for his disputed facts. Such citations to the record are required by this Court's procedural rule (C)(2), and by established case law, which makes clear that to defeat summary judgment, the non-moving party cannot rest on mere denials or allegations, but must respond with facts of record that contradict the facts

-1-

Plaintiff, Emmitt Perkins, is an inmate in the custody of the Pennsylvania Department of Corrections, and is incarcerated at Graterford. Plaintiff has been housed in Graterford's "B-Unit" (or "B-Block"), a general population unit, for over six years. Plaintiff has type II diabetes, and is insulin dependent. Plaintiff's prescribed medical treatment includes receiving two daily insulin shots in the prison dispensary: one in the morning, and one in the afternoon. (Def.'s Statement of Undisputed Facts ¶ 4; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 4.) Plaintiff also has a 30-day refillable prescription for "Glipizide,"[2] a diabetes medication, of which Plaintiff is directed to take one 5mg tablet orally each day, preferably in the morning. (Def.'s Statement of Undisputed Facts ¶ 6; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 6.)

On December 25, 2006, at approximately 6:30 a.m., Plaintiff went to the prison's medical dispensary to receive his morning insulin shot. (Def.'s Statement of Undisputed Facts ¶ 7; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 7.) After receiving his shot, Plaintiff returned to B-Block to eat breakfast in the B-Block dining room. At approximately 7:45 a.m., Plaintiff began feeling ill and experiencing a loss of feeling in his arms and numbness in his fingertips. (Def.'s Statement of Undisputed Facts ¶ 14; Pl.'s Resp. to Def.'s Statement of Undisputed Facts

---

identified by the movant. See Celotex Corp. v. Catrett, 477 U.S. 317, 321 n.3 (citing Fed. R. Civ. P. 56(e)). Here, Plaintiff disputed twenty-one (21) of Defendant's fifty-seven (57) undisputed facts, but provided citations to the record to support his disputed facts in only three (3) instances. Defendant raised this issue in his Response in Opposition to Plaintiff's Statement of Facts (Doc. No. 45), asking the Court to consider any of Plaintiff's disputed facts which lacked citations to the record as being indisputable. After review, the Court finds that many of the facts in dispute are not material the resolution of the pending summary judgment motion. Nevertheless, where Plaintiff failed to provide citations to the record to contradict facts set forth by Defendant, but instead, provided general denials with nothing else, the Court finds that such facts are considered undisputed for purposes of considering Defendant's summary judgment motion, but are not dispositive.

[2]"Glipizide is indicated as an adjunct to diet for the control of hyperglycemia and its associated symptomatology in patients with non-insulin-dependent diabetes mellitus." Jones v. Lancaster Cty., 2007 WL 2345279, at *3 n.1 (E.D. Pa. Aug. 13, 2007) (quoting Physicians' Desk Reference 2603 (58th ed. 2004)).

¶ 14.) Plaintiff also claims that he was feeling "nauseous" and "lightheaded," which "indicated to him that he needed to take his Glipizide medication." (Pl.'s Resp. to Def.'s Mot. for SJ at 1.) Plaintiff thus sought to go to the prison's medication line to obtain his Glipizide medication. (Pl.'s Resp. to Def.'s Mot. for SJ at 1.) Plaintiff went to the front door of B-Block, which leads to the main corridor of Graterford, and showed his blue dispensary pass to the corrections officer manning the door. (Def.'s Statement of Undisputed Facts ¶¶ 19, 20; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 19, 20.) The corrections officer let Plaintiff exit.

At Graterford, an inmate who wants to go to the prison's dispensary must display <u>both</u> a white pass and a blue pass.[3] Defendant Schwappach observed Plaintiff show his blue dispensary pass but not a white pass, and assumed Plaintiff was heading to the dispensary.[4] Based on this assumption, Schwappach asked Plaintiff to produce his inmate ID and a white pass for his inspection. Plaintiff told Schwappach that he was a diabetic, was not feeling well, felt like he would pass out, and needed his Glipizide medication. (Pl.'s Resp. to Def.'s Mot. for SJ at 2.) When Plaintiff produced his inmate ID but not a white pass, Schwappach told Plaintiff to return to B-Block to obtain a white pass. (Def.'s Statement of Undisputed Facts ¶ 33; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 33.)

Both parties acknowledge that Schwappach did not perceive Plaintiff to be in any medical distress during their interaction. (Def.'s Statement of Undisputed Facts ¶ 53; Pl.'s Resp. to

---

[3] The blue dispensary pass allows inmates to proceed to the dispensary for medical treatment; however, the blue pass must be used with a white pass, which indicates the dates and times that the inmate is leaving one area of the prison and entering another. (Def.'s Statement of Undisputed Facts ¶ 22; Pl's Resp. to Def.'s Statement of Undisputed Facts ¶ 22.)

[4] Plaintiff was, in actuality, seeking to go to the prison's medication line, and not the medical dispensary. The medication line and the dispensary are "real close" to each other, and while the dispensary is further away, it is on the same route as the medication line. (Def.'s Statement of Undisputed Facts ¶ 31; Pl's Resp. to Def.'s Statement of Undisputed Facts ¶ 31.)

Def.'s Statement of Undisputed Facts ¶ 53.) At the time of his encounter with Schwappach, Plaintiff was not throwing up, his head was not in his hands, and he was not bent over in pain. (Def.'s Statement of Undisputed Facts ¶ 54; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 54.) Sergeant Schwappach, like all corrections officers at Graterford, was not trained in medicine, did not know the medical history of each inmate, and did not have access to inmate medical records. (Def.'s Statement of Undisputed Facts ¶¶ 51, 52; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 51, 52.)

After speaking with Schwappach, Plaintiff returned to his cell, and did not immediately ask the B-Block sergeant to give him a white pass. (Def.'s Statement of Undisputed Facts ¶ 35; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 35.) At approximately 8:15 a.m. – nearly thirty (30) minutes after Plaintiff first attempted to go to the medication line – Plaintiff obtained a white pass, and proceeded by himself to the dispensary without incident. At the dispensary, Plaintiff did not receive his Glipizide medication because the prescription, which ran out a few days prior to December 25, 2006, had not yet been refilled.[5]

Later that day, at approximately 4:00 p.m., Plaintiff returned to the dispensary for his afternoon insulin shot, and at that time, his blood sugar level was recorded as being relatively normal. (Def.'s Statement of Undisputed Facts ¶¶ 42, 43; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 42, 43.) Nothing in Plaintiff's medical record indicates that he requested or

---

[5] Although Plaintiff had requested that the prescription be refilled prior its running out, Plaintiff's attempt to obtain his Glipizide prescription on the previous day, December 24, 2006, was unsuccessful, as the prescription had not yet been refilled. (Def.'s Statement of Undisputed Facts ¶¶ 15, 16, 17; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 15, 16, 17.) Plaintiff's Glipizide medication was not reordered until on or about December 28, 2006, after Plaintiff signed up for a sick call and brought the matter to the attention of the Physician's Assistant, Gia Freeman.

obtained any emergency medical treatment between his morning and afternoon insulin shots. No medical personnel at Graterford told Plaintiff that he had suffered from diabetic shock. (Def.'s Statement of Undisputed Facts ¶ 45; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 45.) Plaintiff's symptoms of blurred vision and numbness were only temporary, and Plaintiff cannot recall being in great physical pain as a result of the incident. (Def.'s Statement of Undisputed Facts ¶¶ 55, 57; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 55, 57.)

Also on December 25, 2006, Plaintiff filed an inmate grievance in which he wrote that at approximately 7:45 a.m. that day, he had "attempt[ed] to go to the medication line to retrieve my medication. . . . I proceeded to get my med line medication when Sgt. Schwappach ordered me back to the Block claiming no meds when the B-Blk guard stated last call when I left the Block. Request $50,000 for pain and suffering, blurred vision, dry mount and limbs." (Complaint, Ex. A.) Plaintiff further wrote: "Went to dispensary 12/25/06 approx 8:15 a.m. Requests help and medication <u>denied</u>." (Complaint, Ex. A (emphasis in original).) Plaintiff's grievance was denied by the B-Unit Manager on January 11, 2007.

**B.     Procedural History**

Plaintiff commenced this civil action on April 1, 2007, by filing a pro se complaint in the Court of Common Pleas of Montgomery County, Pennsylvania (Docketed at No. 07-10289). Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 against Defendant Schwappach for denial of access to medical care in violation of the Eighth Amendment to the United States Constitution.

On May 24, 2007, Defendant removed the case to federal court (Doc. No. 1), and on May 31, 2007, filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 5). On June

12, 2007, the case was reassigned from the late Judge Clifford Scott Green to the undersigned (Doc. No. 9). Plaintiff responded to the Motion to Dismiss on July 13, 2007 (Doc. No. 11), and on July 17, 2007, filed a motion for the appointment of counsel (Doc. No. 12). On December 19, 2007, the undersigned granted Defendant's motion to dismiss with prejudice, ordered the case to be closed, and denied Plaintiff's motion for the appointment of counsel (Doc. No. 13).

On January 14, 2008, Plaintiff appealed to the Third Circuit Court of Appeals (Doc. No. 14) (Court of Appeals Docket No. 08-1139). In a non-precedential opinion dated August 12, 2008, the Third Circuit affirmed this Court's dismissal of Plaintiff's state-law claims, reversed this Court's dismissal of Plaintiff's Eighth Amendment claim, and vacated this Court's denial of Plaintiff's motion for the appointment of counsel.

On August 21, 2008, Plaintiff filed a Motion for Special Reconsideration for Appointed Counsel (Doc. No. 16), to which Defendant responded on August 26, 2008 (Doc. No. 17). Plaintiff replied on September 3, 2008 (Doc. No. 19). On September 15, 2008, the Court granted Plaintiff's motion for the appointment of counsel, referred the case to the Prisoner Civil Rights Panel, and put the case in suspense (Doc. Nos. 20, 22).

On January 7, 2009, Defendant filed his Answer to Plaintiff's Complaint (Doc. No. 23). On May 12, 2009, Steven Laynas, Esq., entered his appearance on Plaintiff's behalf, and Plaintiff was given thirty (30) days to amend his Complaint (Doc. Nos. 28 and 29). Plaintiff's Amended Complaint was filed on June 11, 2009 (Doc. No. 33), bringing an action for money damages only against Defendant. Defendant's Answer to the Amended Complaint was filed on June 23, 2009 (Doc. No. 34). The parties then engaged in discovery.

On October 30, 2009, Defendant filed a Motion for Summary Judgment (Doc. No. 40), to

which Plaintiff responded on December 9, 2009 (Doc. Nos. 44 and 45). The motions have been fully briefed and are ripe for disposition.

## III. Parties' Contentions

### A. Defendant

In his motion for summary judgment, Defendant first argues that no reasonable jury could find that Defendant was deliberately indifferent to Plaintiff's serious medical needs in violation of the cruel and unusual punishment clause of the Eighth Amendment. Regarding the objective component of the deliberate indifference test, Defendant argues that his refusal to allow Plaintiff to proceed to the medical line to obtain his Glipizide medication did not present a substantial risk of serious harm to Plaintiff because (1) any "delay" in treatment was no more than 30 minutes, (3) Plaintiff's Glipizide refill did not arrive until three days later, (3) the alleged delay caused no lifelong handicap or serious loss, (4) Plaintiff's symptoms were temporary, and (5) Plaintiff could not recall being in any great pain. Regarding the subjective component of the deliberate indifference test, Defendant argues that because he was not medically trained and did not know Plaintiff's medical history, no reasonable jury could find that he was aware of the facts from which the inference could be drawn that a substantial risk of serious harm existed to Plaintiff, and that he actually drew the inference. Defendant also argues that Plaintiff's alleged Eighth Amendment claim must fail because the alleged delay and harm to plaintiff were constitutionally de minimus.

Second, Defendant argues that he is entitled to qualified immunity as a matter of law because his actions were objectively reasonable under the existing law. Specifically, Defendant argues that it was objectively reasonable for him to believe that when Plaintiff showed his blue

dispensary pass, Plaintiff was heading to the dispensary, to believe that Plaintiff was not ill, and to order Plaintiff to return to B-Block to obtain the proper white pass.

### B. Plaintiff

Plaintiff responds by first arguing that a reasonable jury could find that Defendant was deliberately indifferent to Plaintiff's serious medical condition and needs in violation of the cruel and unusual punishment clause of the Eighth Amendment. Regarding the subjective component of the deliberate indifference test, Plaintiff argues that it was clear that Plaintiff was a diabetic in need of medication on a daily basis, including his Glipizide prescription, in order to prevent him from suffering serious illness which could have resulted in his death. Plaintiff contends that because Defendant stopped him on the way to obtain his Glipizide medication and refused to allow him to receive his medication, and because Defendant denies that the incident occurred in the manner in which Plaintiff alleges, there is no doubt that there is a genuine issue as to material facts from which a jury could conclude that Defendant acted with deliberate indifference to Plaintiff's medical needs. Regarding the objective component of the deliberate indifference test, Plaintiff argues that he advised Defendant that he was feeling ill, was a diabetic, and was in need of medication, and that Defendant refused Plaintiff's request. Thus, Plaintiff argues, Defendant was made aware of Plaintiff's need for medical care and deliberately and intentionally refused to allow him to obtain his needed medication.

Second, Plaintiff argues that Defendant is not entitled to qualified immunity because a constitutional violation occurred, and the violation of Plaintiff's Eight Amendment rights was clearly established. Plaintiff further argues that Defendant's actions in the present case were not objectively reasonable.

## IV. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."

Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### B. Section 1983

42 U.S.C. § 1983 provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law.[6] See generally Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002) (recognizing that Section 1983 provides a remedy for violations of individual rights "secured by the Constitution and laws" of the United States).

## V. Discussion

### A. Deliberate Indifference

Plaintiff argues that Defendant was deliberately indifferent to Plaintiff's serious medical condition and needs in violation of the cruel and unusual punishment clause of the Eighth Amendment. In Estelle v. Gamble, 429 U.S. 97, 103-04 (1976), the Supreme Court held that the Eighth Amendment proscribes deliberate indifference to prisoners' serious medical needs. To show deliberate indifference, a plaintiff must demonstrate that (1) he or she was suffering from a "serious medical need," and (2) prison officials were deliberately indifferent to that serious medical need. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). The first prong requires an objective inquiry into the qualitative nature of the harm suffered by the victim of the alleged punishment; the second prong requires a subjective inquiry into the mind of the person inflicting the harm. See Montgomery v. Pinchak,

---

[6]"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . . " 42 U.S.C. § 1983.

294 F.3d 492, 499 (3d Cir. 2002).

Regarding the first prong of the deliberate indifference test, a "serious medical need" is one that "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The Third Circuit has held that diabetes qualifies as a serious medical need. See, e.g., Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) ("[Prisoner] is an insulin-dependent diabetic. . . . [T]his is a serious illness, and [prisoner] had a serious medical need."); Rouse, 182 F.3d at 197 ("[I]nsulin-dependent diabetes mellitus is a serious illness, and therefore only the [second prong of the deliberate indifference test] is in issue here."). Thus, the Court finds that in the present case, Plaintiff, an insulin-dependent diabetic, suffers from a serious medical need sufficient to meet the first prong of the deliberate indifference test.

Regarding the second prong, a prison official acts with deliberate indifference if he or she "knows of and disregards an excessive risk to [an] inmate['s] health or safety." Natale, 318 F.3d at 582 (quoting Farmer, 511 U.S. at 837). The prison official must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. The Third Circuit has indicated that deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." Natale, 318 F.3d at 582 (quoting Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000)). While deliberate indifference may be manifested by an intentional refusal to provide care, the delay of medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in

suffering or risk of injury, see Rouse, 182 F.3d at 197, the deliberate indifference standard is a "stringent standard of fault requiring proof that a [state official] disregarded a known or obvious consequence of his action," Bd. of County Commissioners of Bryan County. v. Brown, 520 U.S. 397, 410 (1997) (emphasis added).

In characterizing deliberate indifference, the Supreme Court has stated that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer, 511 U.S. at 838 (emphasis added). The Supreme Court has further stated that deliberate indifference requires that a plaintiff demonstrate that a defendant's acts or omissions constituted "an unnecessary and wanton infliction of pain" "repugnant to the conscience of mankind" that "offend[s] evolving standards of decency." Estelle, 429 U.S. at 105-06. The Third Circuit has stated that it is "well-settled" that "claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" Rouse, 182 F.3d at 197 (emphasis added).

In the present case, Plaintiff has failed to point to evidence sufficient to show that Defendant Schwappach was deliberately indifferent to Plaintiff's serious medical needs such that Plaintiff's claims survive a summary judgment motion. Schwappach was not trained in medicine, did not know Plaintiff's medical history, and did not have access to Plaintiff's medical file. On the morning of December 25, 2006, when Plaintiff told Schwappach that he was a diabetic, was not feeling well, and wanted to access his Glipizide medication, both parties acknowledge that Plaintiff was not throwing up, his head was not in his hands, and he was not bent over in pain. Schwappach testified at his deposition that when he observed Plaintiff on the

morning in question, Plaintiff did not appear to be in medical distress – a fact that Plaintiff has not in any way contradicted. Because Schwappach did not even perceive Plaintiff to be in any medical distress, Plaintiff clearly is unable to meet his burden of showing that Schwappach "knew of and disregarded an excessive risk" to Plaintiff's health or safety, and that Defendant Schwappach was both aware of facts from which the inference could be drawn that a substantial risk of harm existed, and also drew the inference. See Natale, 318 F.3d at 582 (quoting Farmer, 511 U.S. at 837).

Plaintiff's argument on this issue is unconvincing. In his response to Defendant's summary judgment motion, Plaintiff simply argues that because he told Defendant that he was feeling ill, was a diabetic, and was in need of his medication, and because "[n]otwithstanding this, defendant Schwappach . . . ordered him to return to his block," Schwappach was "made aware of the plaintiff's need for medical care and . . . refused to allow plaintiff to obtain his needed medication . . . . Accordingly, plaintiff has met the deliberate indifference test." (Pl.'s Resp. To Def.'s Mot. for SJ at 5.) Plaintiff cites no case law to support his position, and, as described above, has failed to point to evidence indicating that Schwappach both was aware of facts from which the inference could be drawn that Plaintiff was at risk of substantial harm – and also actually drew the inference. To the contrary, there is no evidence showing that Plaintiff's mere statements that he was feeling ill were enough to make Schwappach aware of a serious risk to Plaintiff. The Court therefore finds that Schwappach did not act "recklessly" and with the required culpable mental state when he required Plaintiff to return to his cell and obtain a white pass. See Brooks v. Kyler, 204 F.3d 102, 105 n.4 (3d Cir. 2000) (Where prisoner claimed deliberate indifference, summary judgment to defendant was proper where there was "no

evidence that the officers who did not immediately grant [the prisoner's] request for a doctor thought that [the prisoner] needed immediate medical treatment, or that the temporary denial 'expose[d] the inmate to "undue suffering or the threat of tangible residual injury."'"). Because Plaintiff has failed to produce evidence from which a jury reasonably could conclude that Defendant acted with deliberate indifference, the Court will grant Defendant's motion for summary judgment.

### B. Qualified Immunity

In the alternative, Defendant argues that he is entitled to qualified immunity as a matter of law. The doctrine of qualified immunity provides that government officials performing "discretionary functions" are shielded from suit if their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Couden v. Duffy, 446 F.3d 483, 492 (3d Cir. 2006) ("Under certain circumstances, government officials are protected from . . . § 1983 suits by qualified immunity."). The doctrine of qualified immunity provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court articulated a two step test for determining whether a government official is entitled to qualified immunity. In the first step, a court must address whether the official's "violated a constitutional right." Id. at 201; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007). If the Court finds that the defendant committed a constitutional violation, the Court then proceeds to the second step: whether the right in question was "clearly established" at the time the defendant acted, meaning that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533

U.S. at 201-02. Stated otherwise, "[a] right is clearly established for purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hubbard v. Taylor, 538 F.3d 229, 236 (3d Cir. 2008) (quoting Williams v. Bitner, 455 F.3d 186, 191 (3d Cir. 2006)). In sum, the doctrine of qualified immunity is "broad in scope," Curley, 499 F.3d at 206 (internal quotation omitted), and "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" Hubbard, 538 F.3d at 236 (quoting Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005)); Malley v. Briggs, 475 U.S. 335, 341 (1986).

In the present case, under the first prong of the qualified immunity test, the Court must "consider whether the facts alleged, taken in the light most favorable to the party claiming the injury, demonstrate that the officer's conduct violated a constitutional right." Meyers v. Majkic, 189 Fed. Appx. 142, 143 (3d Cir. 2006) (citing Saucier, 533 U.S. at 201). A defendant violates a Plaintiff's Eighth Amendment rights "only if [he or she] acted with deliberate indifference to [the plaintiff's] safety." Hamilton v. Leavy, 322 F.3d 776, 786 (3d Cir. 2003). Even in the light most favorable to Plaintiff, the Court finds – for the reasons explained in the preceding section – that Plaintiff failed to show that Defendant acted with deliberate indifference. Therefore, "no constitutional right [was] violated under the facts alleged by the plaintiff," and thus, "our inquiry is at an end and the defendant is entitled to qualified immunity." Meyers, 189 Fed. Appx. at 143 (citing Saucier, 533 U.S. at 201); see also Curley, 499 F.3d at 207 ("If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability." (internal quotation omitted)).

Even if Plaintiff could have successfully shown that Defendant may have violated Plaintiff's constitutional right, Defendant is still "entitled to qualified immunity if the right was not clearly established." Meyers, 189 Fed. Appx. at 143 (citing Saucier, 533 U.S. at 201). As discussed above, a right is "clearly established" only if would have been clear to Defendant that his conduct was unlawful when he denied Plaintiff's request to proceed to the medication line, and told Plaintiff to return to B-Block to obtain a white pass. See Curley, 499 F.3d at 207 (quoting Saucier, 533 U.S. at 202). "If the law did not put [Defendant] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Bayer v. Monroe County Children and Youth Services, 577 F.3d 186, 193 (3d Cir. 2009) (emphasis added) (quoting Saucier, 533 U.S. at 202). This inquiry must be undertaken "in light of the specific context of [each] case, not as a broad general proposition." Curley, 499 F.3d at 207 (quoting Saucier, 533 U.S. at 201).

The Court cannot say that it should have been clear to Defendant that his conduct was unlawful. Given that Schwappach did not perceive Plaintiff to have been in medical distress on the morning of December 25, 2006, and thus could not have known of or disregarded an excessive risk to Plaintiff's health or safety when he ordered Plaintiff to return to B-Block to procure a white pass, the Court finds that Defendant's actions were objectively reasonable, and that Defendant was not on notice that his conduct was "clearly unlawful." At most, Plaintiff contends that Defendant exercised poor judgment by requiring Plaintiff to return to B-Block to obtain a white pass instead of letting Plaintiff proceed to the medication line. Even if Defendant was mistaken in concluding that Plaintiff's medical condition was less serious than it actually was, the doctrine of qualified immunity "gives ample room for mistaken judgments." Malley,

475 U.S. at 341. Plaintiff alleges no facts which indicate that Defendant took any action which a reasonable officer would consider to be "unlawful." Accordingly, Defendant is immune from suit under the doctrine of qualified immunity, and Defendant's motion for summary judgment will be granted on this issue as well.

**VI.** **Conclusion**

For the aforementioned reasons, Defendant's motion for summary judgment will be granted.

An appropriate Order follows.

A:\MSJ Memo - Perkins v. Schwappach 07-2124.wpd